IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| The Connecticut Indemnity Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action 2:04-2522-12 |
| | ) | |
| Matthew Treanor, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| Matthew Treanor, | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Christi Insurance Grouop, Inc. | ) | |
| | ) | |
| Third-Party Defendant. | ) | |
| _____ | ) | |

Matthew Treanor's
Memorandum In Opposition to
Connecticut Indemnity's
Cross-Motion for Summary Judgment

COMES NOW Defendant/Third-Party Plaintiff ("Insured") and submits this Memorandum in Opposition to Plaintiff Connecticut Indemnity Company's ("Insurer's") Cross-Motion for Summary Judgment. This Memorandum is organized as follows. First, it addresses the Insurer's arguments regarding *uberrimae fidei* (Pages 18 – 26 of the Insurer's Memorandum). Second, it addresses the Insurer's arguments regarding the warranty against intentional misrepresentation (Pages 3 – 13 of the Insurer's Memorandum). Third, it addresses the Insurer's remaining arguments in the order in which they appear in the Insurer's Memorandum.

The Insurer's *Uberrimae Fidei* Argument

Overview

The pertinent insurance policy language is as follows:

2. RESTRICTIONS ON THE USE OF YOUR YACHT: There are certain restrictions on the use of your yacht under this policy. ***We will not cover losses that occur while your yacht is being used in any way that is prohibited by this policy*** (emphasis supplied) . . .

These are the restrictions:
The yacht must be used only for private pleasure purposes. It cannot be chartered, leased or used for any commercial purposes unless approved by us in writing.

Where no entrenched federal maritime rule applies, and where one should not be fashioned, state law controls. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1995). (The regulation of marine insurance is with the states).

The Insurer argues that *uberrimae fidei* applies in this case. It does not because:

1) *uberrimae fidei* does not apply to matters of future intent (sometimes referred to as conditions subsequent or promissory warranties) such as intent to charter. Itapplies only to present facts existing at the inception of the insurance policy (sometimes referred to affirmative factual warranties) such as the vessel's loss history, the vessel's value, the vessel's seaworthiness, or the character of the insured;

2) *uberrimae fidei* does not apply where the misrepresentation or nondisclosure at issue was not material to the Insurer's risk in issuing the policy;

3) *uberrimae fidei* does not apply where the Insurer has written itself out of that doctrine by including remedies and elements of proof in the policy conflicting with those of *uberrimae fidei*. In the present case, the remedy the Insurer wrote into the policy for breach of its warranty against chartering was mere suspension of coverage during chartering, not voiding the policy *ab initio*. Also, the warranty against misrepresentation the Insurer wrote into the policy requires additional elements of proof not required by *uberrimae fidei*, proof that the misrepresentation related to the loss and that the misrepresentation was intentional.

4) Further, the rescission remedy under *uberrimae fidei* is one in equity, and the Insurer lacks the clean hands necessary to seek that remedy, since it failed to disclose both that it been downgraded by financial rating companies and that it was leaving the American marine insurance market.

Representations Regarding Chartering Were Not
Material to the Risk because the Policy Did Not Cover Chartering

The Insurer states in its Motion at Page 18:
Contracts of Marine insurance are governed by the doctrine of <u>uberrimae</u> <u>fidei</u>, or utmost good faith, which imposes upon an insured a strict obligation to reveal fully and truthfully all circumstances within its knowledge which may influence **the terms of the risk** (emphasis supplied).

*Uberrimae fidei* pertains only to circumstances which increase an insurer's risk.  It does not apply to circumstances which do not increase the risk. Chartering did not increase the Insurer's risk under the subject policy, because the policy did not cover chartering.  Under the policy's plain language, it suspended coverage during chartering. Because the policy did not cover chartering, any representations regarding chartering were not material to the Insurer's risk.

Representations Must be Material to the Insurer's Risk

The Insurer quotes the following from *Sun Mutual Ins. Co. v. Ocean Ins. Co.*, 107 U.S. 485, 510-511, 1 S.Ct. 582, 600 (1883):

> It is the duty of the assured to place the underwriter in the same situation as himself: to give him the same means and opportunity of judging the **value of the risks** (emphasis supplied); and when any circumstance is withheld, however slight and immaterial it may have seemed to himself, that, if disclosed, **would probably have influenced the terms of the insurance** (emphasis supplied), the concealment vitiates the policy.

Again, *uberrimae fidei* concerns the Insurer's ability to judge the risk.  Where the matter does not affect the risk and where the matter would not influence a reasonable insurer, *uberrimae fidei* does not apply.  A fact is material for *uberrimae fidei* only where it increases an insurer's risk.

There is No Fourth Circuit Rule Applying
*Uberrimae Fidei* to Promissory Warranties

At Page 19, the Insurer states that the doctrine of *uberrimae fidei* has been fully embraced by the vast majority of federal courts.  The Insured agrees.

In a footnote on Page 19, the Insurer states in part, "Nevertheless, defendant's arguments that uberrimae fidei is not an entrenched federal maritime rule or that it is not entrenched in the Fourth Circuit or that it is a dying doctrine or that it should not be applied to a yacht even though the yacht was being used commercially are plainly wrong."  This is not an accurate statement of the Insured's arguments.

*Uberrimae fidei* is an entrenched federal maritime rule in most circuits.  Per *Commercial Union Ins. Co. v. Detyens Shipyard, Inc.,* it is also a rule in the District of South Carolina. 147 F.Supp.2d 763 (D.S.C. 2001).  Nonetheless, there is no entrenched federal maritime rule, nor is there any rule in the Fourth Circuit, applying *uberrimae fidei* to matters of future intent.  *Uberrimae fidei* applies only to present facts existing at the inception of the policy. Intent to charter is not a present fact.  *Uberrimae fidei* does not apply to what are sometimes referred to as "conditions subsequent," also called "promissory warranties."  Where no entrenched

3

maritime rule applies, under the United States Supreme Court case of *Wilbrun Boat,* state law applies. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955). To avoid application of state law, it is not enough for the Insurer to show that there is an entrenched federal maritime rule; the Insurer must show that such a rule applies to the circumstances of the present case.

Insured Requests Repudiation of *Uberrimae Fidei*
With Respect to Private Pleasure Vessels

The Insurer is correct that the Insured argues that *uberrimae fidei* is a dying doctrine. The Insured requests that this Court repudiate the doctrine in the Fourth Circuit with regard to private pleasure vessels. The original reasons for *uberrimae fidei* are not as applicable in the modern world where insurers have access to significantly more information via modern technology and instantaneous international communications. Private pleasure vessel owners are not in the same position as commercial shippers with regard to their knowledge of maritime law. There is insufficient reason to apply federal maritime law as opposed to state law to private pleasure vessels.

Misrepresentation Must be Material to the Risk

At Page 19, the Insurer argues that, under the doctrine of *uberrimae fidei*, an insured is required to fully and voluntarily disclose to the insurer all facts material to a calculation of the risk. The Insured agrees. Nonetheless, chartering was not material to a calculation of the risk for the subject policy, because the subject policy did not cover chartering.

At Page 20, the Insurer argues that there is no factual dispute that a misrepresentation was made. The Insured denies that there was any intentional misrepresentation. There is a factual dispute between the Insured and the Broker regarding whether the Insured requested that the Broker obtain occasional charter coverage, but it is undisputed that neither the Insured nor the Broker communicated to the Insurer that the vessel would be used for charter. Despite the Insurer's argument, for *uberrmaie fidei* to apply, it is not enough for the Insurer to show that there was a misrepresentation.

First, the Insurer must show that the misrepresentation pertained to a present fact of the type to which *uberrimae fidei* applies. Second, the Insurer must show that the misrepresentation pertained to a fact material to the Insurer's risk. Additionally, *uberrimae fidei* does not apply where there is a warranty covering the same matter. *See Gulfstream Cargo, Ltd. v. Reliance Ins. Co.*, 409 F.2d 974 (5th Cir. 1969)(Facts within the boundaries of a warranty, either express or implied, need not

4

be disclosed because the breach of warranty will afford a good defense).  Here, no amount of misrepresentation regarding charter use could increase the Insurer's risk, because the subject policy did not cover chartering.

Materiality is an Objective Test, Not a Subjective Test

At Page 21, the Insurer argues that materiality is conclusively established where, as here, an untrue answer is given to an insurer's specific inquiry in the application of insurance.  That is not the rule.  The Insurer must show, in addition to other elements, not only that there was a misrepresentation, but that the misrepresentation was material to the risk.  The Insurer quotes from the 1925 case of *Bella S.S. Co. v. Ins. Co. of North America*, 5 F.2d 570, 572 (4th Cir. 1925), "[W]here a specific inquiry concerning the risk is made and an untrue answer is given, the policy is avoided whether inquiry and answer were . . . material or not, because the insurer has the right to decide for himself what is material to the risk, and his inquiry is notice to the applicant for insurance that he regards the answer material."

This is not an entrenched test for materiality under *uberrimae fidei*.  Materiality is not a subjective test.  Rather, the test is an objective one.  The test is whether a reasonable insurer would be influenced by risk.  The Insurer fails to mention that the *Bella* Court did not rely on the rule the Insurer quoted.  Instead, the *Bella* court went on to analyze the case in terms of the actual risk:

> **But if we leave that doctrine out of consideration** (emphasis supplied), nobody can doubt that the representation here made was on its face material.  Here the inquiry was: What is the explanation of the apparently excessive insurance applied for.  The answer was specific; the vessel has a value to the owner above the market value because of the profitable charter.  A false representation as to a **material feature of the risk** avoids the policy (emphasis supplied).  No reasonable insurer will knowingly take an insurance risk when it is to the interest of the insured that the property should be lost.

Thus, the doctrine cited by the Insurer is only dicta; it was not relied upon by the *Bella* Court. The doctrine is not the test for materiality for *uberrimae fidei* and is not in keeping with recent *uberrimae fidei* cases.

The Insurer cites two other cases for this proposition.  One is the 1904 case *Kerr v. Union Marine Ins. Co.*, 130 F. 415, 417 (2nd Cir. 1904), *cert. denied*, 194 U.S. 635, 24 S.Ct. 858, 48 L.Ed. 1160 (1904).  *Kerr* is the 1904 case being quoted in the 1925 *Bella* case on which the Fourth Circuit did not rely in reaching its decision.  Instead, as discussed above, the Fourth Circuit evaluated the actual risk to the insurer.

5

The other case cited by the Insurer for this proposition is *Certain Underwriters at Lloyd's v. Montford*, 52 F.3d 219, 222, 1995 A.M.C. 1201 (9th Cir. 1995). With regard to that case, the Insurer states in a parenthetical at Page 21, "vessel's purchase price was 'unquestionably a fact material to the risk' where the application specifically asked for the purchase price." The Insurer takes this quote out of context.

In *Montford*, the insured inserted the "present market value" rather than the "actual purchase price" where the application requested the "actual purchase price." The court did not state that the representation was material because it was asked on the application. Rather, the court stated, "We reject Montford's argument that inserting the 'present market' value of a vessel, rather than the actual purchase price, is an acceptable industry practice in applying for marine insurance *when the application specifically asks for the purchase price*."

Conducting a risk analysis, the court found, "Under these circumstances, the vessel's purchase price is unquestionably a fact material to the risk." The Ninth Circuit did not cite the proposition that a representation is material because it is asked in the application. Its focus on what was asked in the application was to show that the insured's statement was a misrepresentation, not that it was material.

Every other case cited by the Insurer evaluates materiality for *uberrimae fidei* by whether the risk is increased to the insurer.

The test for *uberrimae fidei* is whether the present fact at issue is material to the Insurer's risk at the inception of the policy. In the present case, where the policy did not cover chartering, there is no genuine issue of fact that a representation regarding chartering was in any respect material to the Insurer's risk.

### It is Not Enough for the Insurer to Produce an Affidavit from its Own Agent

At Page 22, the Insurer argues that the misrepresentations regarding the vessel's intended use were material to Mr. Sterling at Marine MGA. That is not the test. The test is not a subjective test of whether the insurer can produce a self-serving affidavit that its agent considered misrepresentations material. Rather, the test is an objective one. The Insurer itself states in its Memorandum, the test is whether the fact "could possibly influence the mind of a **prudent and intelligent** insurer in determining whether he would accept the risk" (emphasis supplied). Thus, it is not enough for the Insurer to assert what its own agent would have done. Rather, it must show that a reasonable insurer would not have issued the policy.

In the present case, there was no incentive for a reasonable insurer to decline the subject policy knowing that the vessel would be used for charter. The policy did

not cover chartering. Each time the vessel was chartered, it was not being used for the covered private pleasure use. As stated in the policy, coverage was suspended during each charter. The policy stated, "We will not cover losses that occur while your yacht is being used in any way that is prohibited by this policy."

The Insurer's *uberrimae fidei* argument is a baseless argument made in an effort to avoid paying this claim. The Insurer was downgraded by the financial rating companies then left the American marine insurance market. It has no interest in client relations or future business in America, because it is no longer doing business here. It has no financial incentive to pay this claim.

At Page 22, the Insurer quotes *Kilpatrick Marine Piling v. Fireman's Fund Inc. Co.*, 795 F.2d at 942, 942-943 (11th Cir. 1986), which makes clear that the test is an objective one, not a subjective one, and further makes clear that the test is whether the misrepresentation was material to the risk:

> All facts are **material to the risk** which would affect the mind of a **rational underwriter, governing himself by the principles on which underwriters in practice act,** as either of the following points: 1st, whether he will take the **risk** at all; 2nd, at what premium will he take it (emphasis supplied). . .

Also at Page 22, the Insurer cites *Albany Ins. Co. v. Horak*, 1994 A.M.C. 273, 282, 1993 WL 269520, *7 (E.D.N.Y. 1993), which further shows that the test is an objective "reasonable insurer" test:

> . . . materiality in insurance context is whether a fact or omission could **reasonably** have affected the insurer's decision to enter the contract, or its evaluation of the degree or character of the risk, or its calculation of the premium (emphasis supplied).

Likewise, the Insurer cites *Crowley Marine Services, Inc. v. Hunt*, 1995 A.M.C. 2562, 2569, 1995 WL 694094, *5 (W.D. Wash. 1995), quoting, "[a] fact is material if it would influence the judgment of a **reasonable** insurer in fixing the premium or in determining if it will take the risk" (emphasis supplied).

A separate issue with regard to the test is that the test is actually a "would" test, not a "could" test. As shown by the cases cited by the Insurer, a fact is material if it *would* influence a reasonable insurer, not if it *could*.

At Page 23, the Insurer misstates the test as follows in two important respects:

> Thus, a fact is material if it influences an underwriters' 1) decision to enter into the contract, 2) evaluation of the degree or character of the risk, or 3) calculation of the premium.

First, the Insurer's statement of the test does not require that the underwriters' decision be reasonable. Under the Insurer's statement of the test, an

insurer need merely provide an affidavit from its agent that it would not have issued the policy, and that is the end of the analysis, regardless of how baseless the insurer's hypothetical refusal to issue the policy.

Second, the Insurer argues in its statement of the test that a change in the "evaluation" is an independent basis for materiality, even where a reasonable insurer would have issued the policy for the same premium. There is no case law to support this basis for materiality. Where there is a misrepresentation but where the misrepresentation would not have prevented an insurer from entering into the same policy for the same premium, the misrepresentation is not material. The insurer cannot avoid a policy after a loss which a reasonable insurer with knowledge of the facts would have issued.

The Insurer Accepted the Premium for
The Risk it Covered

At Page 23, the Insurer argues that per Mr. Sterling's affidavit, had the charter use been disclosed, the Insurer would not have issued this policy, which is an all risks policy designed for recreational, private pleasure use, but, rather, would have issued a named perils form policy it uses for risks it deems commercial, such as sports fishing. The problem with the Insurer's argument is that it did issue the subject policy. It knew the terms of the subject policy; it wrote the terms. It sold the policy. Mr. Treanor thought that he was getting occasional charter coverage; however, his mistake as to the coverage does not preclude his claiming the coverage under the policy he bought.

The Insurer is arguing that if it had known that Mr. Treanor wanted coverage for an additional risk (chartering) not covered by the subject policy, it would have sold him a different policy for a higher premium. That has no relevance to this case. The Insurer evaluated the risk and set the premium for the subject policy it sold to the Insured. It contemplated chartering and eliminated the risk of chartering by including a warranty against chartering which suspended coverage during chartering. The issue in this case is whether a loss sustained during private pleasure use is covered by a private pleasure use policy. The issue is not whether there would be a different policy or a higher premium for a risk not covered under the subject policy.

Due to the Broker's mistake, the Insured did not obtain charter coverage. Since the vessel was occasionally used for charter, this mistake benefited the Insurer, not the Insured. Each time the vessel was chartered, there was no coverage, and the Insured was completely at risk. In contrast, each time the vessel was charted, the Insurer was completely risk free. The Insured's argument is an illogical

one that since the Insured failed to get the coverage he desired, he cannot enforce the coverage he got.

The Insurer's argument is analogous to an argument that if an insured mistakenly bought only $500,000 worth of coverage on a vessel actually worth $1 million, that he would not be able to enforce that coverage because, had the Insurer known the true value, it would have sold him coverage for $1 million but at a higher premium.

This case is really as simple as it seems: The policy did not cover chartering; chartering was not material to the risk. The Insurer did not charge a premium to cover the risk of chartering and cannot avoid the policy for a risk it did not cover.

The Insured carefully evaluated the risk of selling the subject policy. It included a warranty against chartering, thereby eliminating the risk of chartering. It carefully calculated the premium, and sold the subject policy to the Insured. It cannot now argue that this policy is void because it would have sold the Insured a different policy for a higher premium to cover a risk (chartering) not covered by this policy.

Increased Frequency of Chartering
Decreased the Insurer's Risk

The only factual basis that the Insurer cites in its Memorandum that chartering constitutes a greater risk is that charter vessels are used a great deal more frequently than vessels for private pleasure use only. It states in Footnote 20 at Page 23:

> Unlike ACE/INAMAR, however, Marine MGA's underwriting philosophy accounts for the greater risk associated with charter coverage predominantly in the hull portion of the premium since charter vessels are used a great deal more frequently than vessels for private pleasure only and, therefore, have a greater chance of sustaining physical damage. (Sterling Aff. ¶¶ 15, 17, 37-39).

The fallacy of the Insurer's factual argument is that it pertains to policies that cover chartering. Under the language of the subject policy, increased frequency of chartering decreased the risk. Assuming that the Insurer's factual argument is true for the purposes of Summary Judgment, increased frequency of charter use, under the terms of the policy, actually decreased the risk. Each time the vessel was chartered, it was not used for private pleasure use. Chartering was not covered under the policy; only private pleasure use. Thus, chartering *decreased* the amount of time the Insurer covered the vessel.

The Insurer's argument that chartering coverage required a higher premium because chartering entails a greater risk is not relevant to a policy that does not

2:04-cv-02522-CWH    Date Filed 09/05/05    Entry Number 56    Page 10 of 24

cover chartering. The Insurer has proffered no evidence that chartering increased its risk for the private pleasure use it covered.

In the present case, under the objective test, there is no genuine issue of material fact, because no reasonable insurer would decline to issue this policy. The Insurer in this case issued the policy assuming that there would be no chartering. Thus, the Insurer's own action in issuing the policy shows that the premium was sufficient assuming no chartering. With chartering, the risk was no greater, since the policy did not cover chartering. In fact, chartering decreased the Insurer's risk by decreasing the amount of time the vessel was covered. The Insurer's sole factual argument that there is an increased frequency of use for chartering undermines its own position, because increased frequency of chartering decreased its risk under the language of the subject policy.

<u>While the Misrepresentation for *Uberrimae Fidei*
Need Not be Causally Related to the Loss,
It Must be Material to the Risk</u>

At Page 23, in Footnote 19, the Insurer argues that under the doctrine of *uberrimae fidei,* there is no requirement that the misrepresentation or nondisclosure be causally related to the loss. The Insured agrees; however, the misrepresentation or nondisclosure must be material to the risk, and there is no genuine issue of material fact under the terms of the subject policy that it was not material to the risk.

At Page 24, the Insurer states, ". . . all three marine insurance brokers deposed in this action (i.e. Christi, Brown & Brown Marine and Treanor's designated expert, Strickland Marine), uniformly admitted that the question of a vessel's use is material to all the marine insurance companies from which they seek quotes." Nonetheless, the term "material" was not defined in the deposition questions, and the brokers were not asked, nor were they in a position, to evaluate materiality with regard to the legal doctrine of *uberrimae fidei.*

<u>Two Southern District of Florida Cases
Wrongly Apply *Uberrimae Fidei* to Promissory Warranties</u>

At Pages 24 and 25, the Insurer argues two Southern District of Florida cases applying *uberrimae fidei* to promissory warranties. These cases are anomalies in the body of *uberrimae fidei* law. Promissory warranties regarding future intent are properly the subject of express warranties in insurance policies, not *uberrimae fidei.*

The subject policy in the present case contained such an express warranty, but it only suspended coverage during charter use.

This is a breach of warranty case which the Insurer presents as an *uberrimae fidei* case. The Insurer did not plead breach of warranty against chartering because coverage was merely suspended under the warranty, and the loss did not occur while the vessel was being chartered.

*Uberrimae fidei* applies only to present facts. It does not apply to future intent. Future intent is properly the subject of a warranty, just as it was the subject of a warranty against chartering in this subject policy. The Insurer is attempting to avoid the remedy it drafted into the policy for breach of the warranty that it included in the policy. With the exception of two Southern District of Florida cases discussed below, these are the present facts at issue in the cases the Insurer has cited with regard to *uberrimae fidei*:

a) Over-insurance of the vessel. *Sun Mutual Ins. Co. v. Ocean Ins. Co.*, 107 U.S. 485, 510-511, 1 S.Ct. 582, 600 (1883)(over-insurance); *Kilpatrick Marine Piling v. Fireman's Fund Ins. Co.*, 795 F.2d 940 (11th Cir. 1986) (Omitted facts found not material to the risk).

b) Nondisclosure of a known loss. *Puritan Ins. Co. v. Eagle S.S Co. S.A.* 779 F.2d 866 (2nd Cir. 1985) (The insurer failed to prove that it would not have undertaken the risk had they been fully informed of the loss).

c) Present use of barges as docks. *East Coast Tender Services, Inc. v. Robert T. Wizinger, Inc.*, 759 F.2d 280, 284 n.3 (3rd Cir. 1985) (Coverage found).

d) Nondisclosure of extensive history of insurance claims. *CIGNA Property and Cas. Ins. Co. v. Polaris Pictures Corp.*, 159 F.3rd 412 (9th Cir. 1998).

e) Nondisclosure of allegedly unseaworthy conditions in vessel survey. *Kilpatrick Marine Piling v. Fireman's Fund Ins. Co.*, 795 F.2d 940, 942 (11th Cir. 1986) (Vessel found to be seaworthy at the inception of the policy);

f) Misrepresentation that repairs suggested in a vessel survey had been made. *Certain Underwriters at Lloyd's v. Johnson*, 124 F.Supp.2d 763 (D.P.R. 1999) (Insureds were unwilling to comply with the seaworthiness recommendations in the vessel survey yet caused to be issued a letter to the insurer that the repairs had been made).

g) Insured's failure to disclose that it did not have custody of a yacht and that no charter agreement had actually been finalized. *HIH Marine Services, Inc. v. Fraser*, 211 F.3d 1359, 1362 (11th Cir. 2000);

h) Nondisclosure of unseaworthy conditions. *Steelmet, Inc. v. Carbie Towing Co.*, 747 F.2d 689, 695 (11th Cir. 1984)

i) Failure to disclose a prior insurance cancellation by another insurer based on insurance fraud regarding the same artifacts sought to be insured. *Kight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 13 (2nd Cir. 1986)

j) Representation that, at the time of the insurance contract's inception, the ship had not already sailed, when in fact it had. *Kerr v. Union Marine Ins. Co.*, 130 F. 415 (2nd Cir. 1904): sailing date of the ship.

k) Failure to disclose loss history, misrepresentation of the purchase price, and misrepresentation of the vessel's age. *Certain Underwriters at Lloyd's v. Montford*, 52 F.3d 219, 222, 1995 AMC 1201 (9th Cir. 1995)

l) Failure to disclose a marine survey of the vessel showing unseaworthiness. *Gulfstream Cargo Ltd. v. Reliance Co.*, 409 F.2d 974 (5th Cir. 1969)

m) Failure to disclose purchase price of a vessel bought "as is" and failure to disclose loss history. *Albany Ins. Co. v. Horak*, 1994 A.M.C. 273, 282, 1993 WL 26920, *7 (E.D.N.Y. 1993)

n) Misrepresentations regarding experience as a Navy commander, training as a certified navigator, applying for an unlimited license, master in any weather, and a pending captain's license. *Northfield Ins. Co. v. Barlow*, 983 F.Supp. 1376, 1380 (N.D.Fla. 1997)

o) Failure to disclose an accidental death on board the vessel the day before the inception of the policy. *Crowley Marine Services, Inc. v. Hunt*, 1995 A.M.C. 2562, 2569, 1995 WL 695094, *5 (W.D.Wash. 1995).

Only two cases cited by the Insurer have to do with future intent. Those cases are out of keeping with the body of *uberrimae fidei* law. While the Southern District of Florida described them as *uberrimae fidei* cases, they are actually breach of warranty cases. Additionally, those cases are significantly different from the present case on their facts. There are no such Fourth Circuit cases applying *uberrimae fidei* to matters of future intent. Application of *uberrimae fidei* to matters of future intent as opposed to facts present at the inception of the insurance contract is not an entrenched maritime principle and is not a rule in the Fourth Circuit.

The following are all of the Fourth Circuit cases that the Insured's counsel has located on *uberrimae fiei*. There are no Fourth Circuit cases applying the *uberrimae fidei* to future intent. All of the cases apply to present facts:

a) Unseaworthiness. *Commercial Union Ins. Co. v. Detyens Shipyard, Inc.*, 147 F.Supp.2d 763 (D.S.C. 2001);

b) Trustworthiness of the survey report. *Smith v. Cont'l Ins. Co.*, 2001 Dist. LEXIS 4999 (D. Md. 2001)(Survey was done by a person who (1) was insured's social acquaintance, (2) had no prior experience, and (3) made a questionable valuation;

c) Failure to reveal suspended driver's license and a history of moving violations. *North Am. Specialty Co. v. Savage*, 977 F.Supp. 725, 1998 AMC 769 (D. Md. 1997).

d) Market value of the steamship. *Bella v. Ins. of North America*, 5 F.2d 570 (4th Cir. 1925).

Each of the Two Southern District of Florida Cases
Is Factually Different from the Present Case

The Insurer argues that there was a "nearly identical factual situation to the present case" in *La Reunion Francaise, S.A. v. Thompson*, 1999 AMC 2579, 1999 WL 1293470 (S.D.Fla. 1999), *rev'd in part*, *vacated in part*, 248 F.3d 1177 (11th Cir. 2001), *appeal after remand*, 2002 WL 31174180 (11th Cir. 2002). Nonetheless, in *La*

*Reunion Francaise, S.A.*, there is no indication that the policy contained a warranty suspending coverage during chartering. Thus, the policy in *La Reunion* covered charter use. That was a significant factual difference. In *La Reunion Francaise, S.A.,* unlike the present case, the insurer assumed the risk of chartering.

Additionally, in *La Reunion Francaise, S.A.,* the insured did not raise the issue that *uberrimae fidei* does not apply to conditions subsequent and argued only that he did not actually use the vessel for charter. Thus, the case turned only on the factual issue of whether the insured used the vessel for charter purposes.

The Insurer goes on to cite an unreported decision by the Eleventh Circuit affirming the judgment in *La Reunion Francais, S.A.* First, the Insured objects that this is not a reported opinion. Second, a case in which chartering was covered by the policy is not applicable to the present case in which chartering was not covered. Moreover, the Southern District of Florida's application of *uberrimae fidei* to promissory warranties was erroneous and conflicted with the body of *uberrimae fidei* law.

At Page 26, the Insurer cites another case from the Southern District of Florida, *Certain Underwriters at Lloyds, London v. Gioire*, 27 F.Supp.2d 1306, 1313-14, 1998 A.M.C. 2153 (S.D.Fla. 1998). In that case, the Southern District of Florida again mistakenly applied *uberrimae fidei* to a condition subsequent. To the Insured's counsel's knowledge, no cases outside the Southern District of Florida do this. Presumably the Insurer would have cited any such cases in its Memorandum if they existed. This is certainly not an entrenched application of *uberrimae fidei* in federal maritime law. *Applying uberrimae fidei* to conditions subsequent is certainly not the rule in the Fourth Circuit. Where there is no entrenched maritime rule, state law applies.

Additionally, *Gioire* is factually different from the present case. Unlike the present case, the representation in *Gioire* related to a risk potentially covered by the policy. The insured's broker represented that the yacht would not be used for racing. The policy excluded losses in preparation for racing. The loss occurred while the insured was qualifying for a race. The court found a genuine issue of fact of whether the exclusion applied. Thus, in *Gioire*, the representation was material to risk. In the present case, the policy excludes chartering. Thus, unlike *Gioire*, in the present case, any representation about chartering was absolutely immaterial to the risk, because the policy did not cover that risk.

At Page 26, the Insurer argues that the Court need not reach the language of the policy. Incredibly, the Insurer states, "Defendant cannot use clauses from a policy that he obtained because of his material misrepresentations to argue that the misrepresentations were not material to that policy." Unless the Court looks at the

policy, how else would the Court know whether the representations were material to the risk?

The Insurer argues, "The misrepresentations were the only reason defendant obtained the policy he did." The test is not whether the Insured would have bought a different policy if his Broker had informed him that the subject policy did not cover occasional charter use. Likewise, the test is not whether the Insurer would have issued a different policy if the Broker had requested coverage for the additional risk of chartering. Rather, the test is whether the representations were material to the private-pleasure-use risk that the Insurer covered. Even if the Insured might have purchased a different policy had he known he was not fully covered, the Insurer cannot avoid a policy for representations unrelated to the risk it covered and for which it accepted a premium.

Insurer's Unclean Hands
Prevent Its Seeking Rescission

At Page 26, the Insurer argues that the Insured's unclean hands argument is without legal and factual merit. It appears beyond dispute that at the inception of the policy, the Insurer knew that it had been downgraded financially, knew that it was leaving the American marine insurance market, and failed to disclose this to the Insured. To date, the Insurer has avoided presenting its managing agents for deposition in South Carolina where it chose to bring this lawsuit. The Insured has requested an extension of discovery and has moved to compel the attendance of the Insured's agents. More discovery is needed on this issue.

The remedy the Insurer seeks is rescission of the policy. Rescission of a contract is an equitable remedy. One who seeks equity must do equity. The duty of utmost good faith under *uberrimae fidei* applies not just to insureds but also to insurers. The Insurer is wholly owned by Royal SunAlliance. *Uberrimae fidei* does not apply to matters of intent; however, it if did, the intent of the Insurer's parent company to leave the American marine insurance market was material to the Insured's decision to purchase a policy from the Insurer. At the time the Insurer issued this policy, Royal SunAlliance had already decided to leave the American marine insurance market.

Independently, the fact that the Insurer and its parent company had been downgraded by financial rating companies was both a present fact and material to the Insured. The Insured does not seek rescission of the policy based on *uberrimae fidei.* The Insured seeks to enforce the policy he bought; nonetheless, the Insurer's unclean hands with regard to disclosures it had a duty to make but failed to make preclude it from seeking the equitable remedy of rescission.

Insurer Failed to Respond to Several Points
Raised by the Insured

      With regard to the following points, the Insurer makes no argument other than that the Court should not look at the language of the subject policy:

      a. That the Insurer wrote itself out of *uberrimae fidei* by including an express warranty against chartering with a remedy of mere coverage suspension which conflicts with the *uberrimae fidie* remedy of rescission of the policy;

      b. That the Insurer wrote itself out of *uberrimae fidei* by including an express warranty against misrepresentation with elements of proof for materiality and intent conflicting with those of *uberrimae fidei*;

      c. That a nondisclosure defense such as *uberrime fidei* does not apply where there is a written warranty covering the same subject.

Insurer Wrote Itself Out of
*Uberrimae Fidei*

      In keeping with contract law in general, the Eleventh Circuit held in *King v. Allstate Insurance Co.*, 906 F.2d 1537, 1991 AMC 204 (11th Cir. 1999), that with regard to *uberrimae fidei*:

> It is clear that parties are free to 'contract-out' or 'contract around' state or federal law with regard to an insurance contract, so long as there is nothing void as to public policy or statutory law about such a policy.

*Uberrimae Fidei* Does Not Apply to
Promissory Warranties

      The Insurer makes no response to the point that *uberrimae fidei* does not apply to promissory warranties. This case is a breach of promissory warranty case that the Insurer is attempting to present as an *uberrimae fidei* case.

      The Conference on International Law Association in the CMI Yearbook 2000 Review Initiative on Marine Insurance gives a thorough description of the law of marine insurance warranties, explaining the difference between promissory warranties and affirmative, factual warranties:

6.2.2. *What constitutes a warranty*

> According to UK MIA sec 33(1) a warranty is a condition whereby the assured undertakes that some particular thing shall or shall not be done, or that some condition shall be fulfilled, or whereby he affirms or negatives the existence of a particular state of facts. A similar definition is used in US, and apparently also in South Africa.

According to this definition, there are two different kinds of warranties. The **first kind** is **an affirmative, factual warranty** that is a stipulation that certain facts exists. An example is a statement that a vessel is classified with a particular classification society at the time the proposal for insurance was submitted. The **second** is a **promissory warranty** or continuing warranty that is a true promise that pertains to the future as well as the present. A promissory warranty binds its maker to a promise to do or refrain from doing something during the currency of the policy, or that a certain state of affairs shall exist during the policy. An example here will be that the vessel's class shall be maintained throughout the insurance period. The first kind of warranty seems to be closely connected to representation, which also may be described as a stipulation of a certain fact. The **second kind** of warranty seems similar to an alteration of the risk, the assured's duty is expressed as an undertaking or guarantee which is **not necessarily connected to the risk.**

Breach of a Promissory Warranty
Merely Suspends Coverage During the Breach

Under South Carolina law, breach of a promissory warranty in a marine insurance contract merely suspends coverage during the time of the breach. In *Tsalapsatas v. Phoenix Ins. Co. of Hartford Conn.*, 236 S.C. 508, 511, 115 S.E.2d 49, 50-51 (1960), the South Carolina Supreme Court quoted with favor the following language from the Missouri Court of Appeals case *Schafer v. Home Ins. Co.*, 239 Mo. App. 586, 194 S.W.2d 718, 719 (Mo. Ct. App. 1946):

We are of the opinion and hold that the plaintiff's breach of warranty above described resulted in a suspension of the insurance on the boat at the time of the loss is shown to have occurred. The breach of a promissory warranty or conditions subsequent contained in a policy of insurance such as that before us operates to suspend coverage of the policy during the existence of the breach.

Federal maritime law is the same as South Carolina law on this point; breach of a promissory warranty merely suspends coverage during the time of the breach. *See Reliance Ins. Co. v. Yacht Escapade*, 280 F.2d 482, 487, 1961 AMC 2410, 2416 (5th Cir. 1960)(coverage restored when breach of warranty concerning private pleasure use was cured); *Commercial Union Ins. Co. of N.Y. v. Daniels*, 343 F.Supp. 674, 676, 1973 AMC 452, 454 (S.D.Tex. 1972)(coverage restored when breach of warranty concerning change of management was cured); *Hejas v. Aetna Ins. Co.*, 132 F.2d 715, 719, 1943 AMC 27, 31-32 (2nd Cir. 1943) (coverage restored when breach of warranty concerning watchmen was cured).

Professor Thomas J. Shoembaum wrote the following regarding this subject in his Tulane Maritime Law Review article Warranties in the Law of Marine Insurance: Some Suggestions for Reform of English and American Law. 23 Tul. Mar. L.J. 267, 295-296 (1998-1999):

16

1. Cure of the Breach

A well-established doctrine in the American cases is that breach of warranty does not automatically void the coverage, cover merely is suspended as of the time of the breach.  A corollary of this rule is that the assured has the opportunity to cure the breach and reinstate cover.

The justification for this doctrine is the law's abhorrence of the harsh consequences of forfeiture.  Consequently coverage is not permanently destroyed.  It is suspended so long as, but only so long as the violations . . . continue.  Equally clear [is that] coverage is revived the moment the breaches or conditions cease.

Employing this doctrine, the American courts hold that when breaches of warranties in marine policies concerning private use, change of management, and watchmen were cured, coverage was restored.  Therefore, many courts will hold that breach of promissory warranty will not terminate the coverage unless that is stated "convincingly" in the policy.

Under federal maritime law, coverage resumes the moment the breach ends. *Id.*

The Insurer offers no arguments should the Court consider the language of the policy.  The Insurer's argument that the Court should not consider the language of the policy is an admission that if the Court does consider the language of the policy, its arguments fail.

<u>The Insurer's Argument of</u>
<u>Warranty Against Intentional Misrepresentations</u>

At Pages 26 to 28 of the Insurer's Memorandum, the Insurer argues in the alternative that the policy is void on the basis of the policy's warranty against intentional misrepresentations.

The subject policy contained the following clause:

12.  **CONCEALMENT OR MISREPRESENTATION:** All coverage provided by us will be voided if you ***intentionally*** conceal or misrepresent any ***material*** fact or circumstance to this insurance, whether before or after a loss (emphasis supplied).

The Insurer's argument fails on two grounds.  First, the policy language requires proof that the misrepresentation was intentional.  Second, it requires proof that the misrepresentation was material.  Per *Wilburn Boat,* marine insurance warranties are interpreted under state law.

<u>Material Dispute of Fact Regarding Intent</u>

The Insurer argues that the Insured's misrepresentation was intentional because he knew that he intended to charter at the time that he signed the application prepared by his insurance broker, Christi Insurance Group, Inc. ("Broker").  Nonetheless, the

Insured testified in deposition that he raised the issue to the Broker and that the Broker told him that occasional charter use was embedded in the policy.

For a misrepresentation to be intentional, the Insurer must show that the Insured intended to deceive the Insurer. It is not enough to show that the Broker mislead the Insured about what the policy covered.

The Insurer further argues that the Insured had a duty under the law to read the policy and know its terms. That is nonsense. Of course, the Insured is deemed to have read the policy, but he had no affirmative duty to read it. The Insured relied on his Broker.

Policy Does Not Require Written Disclosure of Charter Use

At Page 28, the Insurer states, "The Policy expressly forbids charter or commercial or business use unless prior written permission is received." The Insurer then argues that this imposed a duty on the Insured to inform the Insurer of such use. The policy imposed no such duty. Rather, it simply suspended coverage during charter use. Obtaining prior written permission under the policy language pertains to obtaining a waiver of coverage suspension. It has nothing to do with concealment.

Under the Warranty Against Misrepresentation,
The Misrepresentation Must be Material to the Loss;
Life Insurance is Different

Also at Page 23 in Footnote 19, the Insurer argues that under South Carolina law, the misrepresentation or nondisclosure need not be material to the loss in the present case. That is not correct. The Insurer cites the inapposite life insurance case of *Carroll v. Jackson Nat. Life Inc. Co.*, 307 S.C. 267, 269, 414 S.E.2d 777 (S.C. 1992). Life insurance is different from property and casualty insurance in this respect because challenging the truthfulness of representations in life insurance applications is controlled by a state statute.

In the past, insurers would gather evidence of misrepresentations in life insurance applications immediately after the policies were issued. They would nonetheless collect the premiums until the insureds died and then claim that the policies were void *ab initio*. South Carolina Code Ann. § 38-63-220(d) was enacted to require that insurers challenge the truthfulness of the applications for life insurance within the first two years of the policy.

Since most people do not die within the first two years of obtaining a life insurance policy, the ultimate cause of death is rarely known within two years. Thus, whether a misrepresentation in the life insurance application was material to the loss

would rarely be known within two years, and a rule requiring the insurer for life insurance policies to show that the misrepresentation or nondisclosure was material to the death within two years of issuing the policy would be unworkable. Thus, the rule in *Carroll v. Jackson Nat. Life Ins. Co.* pertains to life insurance policies and does not pertain to a marine property loss case.

The rule in South Carolina with regard to property and casualty claims is that for a misrepresentation to be material, it must be causally related to the loss. This rule is stated in *Emmanuel Baptist Church v. Southern Mutual Church Ins. Co.*, 259 S.C. 223, 191 S.E.2d 255 (1973) ("Since the courts look with disfavor upon forfeitures, the trend of modern authority is to hold that there is no forfeiture if the breach of condition or warranty did not contribute to the loss, or did not increase the risk at the time of the loss"). This rule is consistent with that of other states. *See Highlands Ins. Co. v. Koetje*, 651 F.Supp. 346 (W.D.Wash. 1987) ("Washington law is that an insurance contract will be voided upon breach of warranty by the assured only if the breach contributed to the loss sustained or increased the risk of loss of the type sustained.") "Breach of an express warranty in a contract for marine insurance releases the insurer from any liability **due to the breach."** *Goodman v. Fireman's Fund Ins. Co.*, 600 F.2d 1040 (4th Cir. 1979).

Insurer Must Also Show that the Misrepresentation
Was Material to the Risk

Under South Carolina law, in addition to showing a causal relationship to the loss, to void a policy of insurance on the ground that a fraudulent representations were made in procuring such a policy, the burden of proof rests on the insurer to show, by clear and convincing evidence that the misrepresentations were material to the risk, were relied upon by the insurer, and that they were made with the intent to deceive and defraud the company. *Lanham v. Blue Cross and Blue Shield of South Carolina, Inc.*, 349 S.C. 356, 563 S.E.2d 331 (2002). In the present case, the Insurer cannot show that representations regarding charter use were material to the risk or relied upon by the Insurer because the subject policy did not cover charter use. Also, the Insured denies that the representations were made with an intent to deceive or defraud. The Insured wanted occasional charter coverage and requested that his Broker obtain such coverage.

Insured Had No Motive to Make an Intentional Misrepresentation

It would make little sense for the Insured to intentionally pay thousands of dollars to obtain a policy not covering chartering and intentionally not have coverage

if he suffered a loss while chartering. Further, the evidence shows that the Insured disclosed his charter use of the subject vessel to everyone involved. In the past, he had charter coverage on the vessels he chartered. He told his banker, the yacht documentation expert, and his boat broker that he intended to charter. He advertised his charter use on the Internet and by word of mouth. The only person with whom the Insured dealt who claims not to have known about the Insured's intended charter use is the Insured's insurance broker, Third-Party Defendant Christi Insurance Group, Inc. In the event of a hypothetical loss which occurred during a charter, it would be immediately apparent that the vessel was being used for charter at the time of the loss. The persons chartering the vessel at the time of such a loss would be witnesses. The Insurer makes a nonsensical argument that the Insured was trying to save money by intentionally buying a policy which would not cover his occasional charter use.

The Insurer's breach of warranty against misrepresentation argument fails, among other reasons, due to the fact that the loss of the yacht was not causally related to any representation regarding chartering, since the loss did not occur during chartering. In *Wilburn Boat*, the United States Supreme Court held that there was no judicially established federal admiralty rule governing marine insurance warranties. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 313 (1955). Warranties in marine insurance policies are interpreted under state law. Both the Insurer and the Insured agree that where no federal maritime law applies, the applicable state law is South Carolina law.

<u>The Insurer's Remaining Arguments</u>

<u>The Insurer's Factual Arguments</u>

On Pages 3 – 4, the Insurer explains the parties. From pages 4 – 13, the Insurer describes the claims investigation and facts learned during discovery, attempting to build drama regarding its discovery through various pieces of circumstantial evidence of the undisputed fact that the Insured made occasional charter use of the vessel. Why did the Insurer not conduct a normal post-loss investigation and simply ask the Insured? The Insured never tried to hide his use of the vessel. Relying on his Broker, the Insured thought that occasional charter coverage was embedded in the policy. The first time the Insurer asked the Insured to respond regarding charter use, when the Insurer filed its declaratory judgment action, the Insured freely admitted that he made occasional charter use of the vessel. The Insured's yacht broker, banker, and documentation expert all testified in deposition that the Insured disclosed his intended charter use of the vessel to them. Despite

there being more than thirty documented conversations between the Insured and the Broker, the Broker is the only person who claims he did not know the Insured's intended use of the vessel. The Insured advertised chartering on the Internet and by word of mouth.

The only material facts in this case are (1) the language of the policy suspending coverage during charter use and (2) the fact that the Insurer was not chartering at the time of the loss. These facts are not contested, and the Insured is entitled to judgment as a matter of law.

Standard for Summary Judgment
Choice of Law

The Insured agrees with the Insurer's citations regarding the standard for Summary Judgment, but, as set forth herein, disagrees with its conclusion.

The Insured agrees that, under *Wilburn Boat*, in the absence of a well-established federal admiralty rule, state law applies. The Insured further agrees that in the absence of an established federal maritime rule, in the present case, the law of South Carolina applies due to the vessel's connections to South Carolina.

Agency Relationship of Christi

The Insured agrees that normally a marine insurance broker is an insured's agent. This agency relationship normally includes representations to an insurer on behalf of an insured. Nonetheless, in the present case, it appears that Christi Insurance Group, Inc. ("Broker") had some degree of binding authority for the Insurer. Thus, the Broker may have served as a dual agent, representing both the Insured and the Insurer. To date, the Insurer has avoided presenting its managing agents for deposition in South Carolina where it filed this lawsuit. More discovery is needed on the agency relationship of Christi. The Insured has requested an extension of discovery and moved to compel the appearance of the Insurer's managing agents for deposition in South Carolina. Regardless of Christi's agency relationship, any representation made by Christi with regard to chartering was not material to the risk, because the subject policy did not cover chartering.

The Insured's Counterclaim for Bad Faith

The Insured agrees with the Insurer that an insurer acts in bad faith when there is no reasonable basis to deny a claim. *American Fire and Casualty Co. v. Johnson*, 332 S.C. 307, 504 S.E.2d 356 (1998). The Insurer argues that the evidence and law provide a meritorious basis to support its denial of this claim. As set forth above, there was no factual or legal basis to deny this claim. The representations

the Insurer has cited to deny the claim related to chartering.  Since the policy did not cover chartering, chartering was not material to the risk.

The Insured's Counterclaim for
Breach of Contract Accompanied by a Fraudulent Act

The Insured agrees with Insurer that the elements of Breach of Contract Accompanied by a Fraudulent Act are the following: (1) a breach of contract; (2) fraudulent intent relating to the breaching of the contract and not merely to its making, and (3) a fraudulent act accompanying the breach.  *See Conner v. City of Forest Acres*, 348 S.C. 454, 560 S.E.2d 606 (2002).  The Insurer argues that there was no breach of contract since the policy was void.  As discussed above, the policy was in force and provided coverage for the private pleasure use at the time of the loss.

The Insured's Counterclaim for Negligence

The Insured agrees that to establish a claim for negligent breach of contract, the Insured must prove that the Insurer owed him a duty of care which existed independent of its duty under the contract.  *See John Brown Engineering, Ltd. v. Herman Ludwig, Inc.*, 1991 WL 244452 (D.S.C. 1991), *aff'd* 960 F.2d 146 (4th Cir. 1992).  The Insurer argues that no such duty exists here; however, in South Carolina, an insurer owes an insured a fiduciary duty once it undertakes to provide insurance.  Thus, the Insurer owed the Insured a fiduciary duty independent of the insurance contract.

The Insured's Counterclaim for Negligent Misrepresentation

The Insured agrees with the Insurer that the elements of Negligent Misrepresentation are that: (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the representation; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance on the representation.  *See Sauner v. Public Service Authority of South Carolina*, 354 S.C. 397, 518 S.E.2d 161 (2003).

The Insured concedes that, relying on the Broker, he did not read the subject insurance policy.  The Insurer argues that in the case of *Doub v. Weathersby-Breeland Ins. Agency*, 268 S.C. 319, 233 S.E.2d 111 (1997), the Court held that an insurance agency was not liable for negligent misrepresentation concerning coverage under a fire insurance policy where the insured never read the policy, stating, "one cannot

complain of fraud in the misrepresentation of the contents of a written instrument in his possession when the truth could have been ascertained from reading it." The fallacy of the Insurer's argument is that this is not a case where the truth could have been obtained from reading the policy. The truth is that the Insurer is denying this claim without a basis despite the language in the policy. Reading the policy would lead any reasonable insured to believe that he had coverage for private pleasure use and that the Insurer would pay a loss that occurred during private pleasure use. The Insurer argues that there was no representation to the Insured, but the policy is a representation by which the Insurer is bound, regardless of whether the Insured read the policy. The Insured detrimentally relied on the policy in not obtaining insurance from another insurer.

## The Insured's Counterclaims for Fraud and Constructive Fraud

The Insured agrees with the Insurer that the elements of fraud are: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard for the truth; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury. *Ardis v. Cox*, 314 S.C. 512, 431 S.E.2d 267 (1993).

In the present case, the Insurer provided a policy of insurance representing that it would provide private pleasure use coverage. This representation was relied upon by the insured in paying the premium. The Insured was ignorant of the fact that the Insurer would not provide private pleasure use. He relied on the representation in paying the premium and not obtaining other coverage. The Insured had a right to rely on the Insurer, since the Insurer owed him a duty of good faith under the policy. As a direct and proximate result, the Insured has lost the amount of the premium and suffered an unpaid loss of his vessel.

## The Insured's Counterclaim for Civil Conspiracy

The Insured agrees with the Insurer's citations of authority with regard to Civil Conspiracy. The Insured argues that Christi had no involvement in handling the claim or in the Insurer's decision to deny the claim; accordingly, the Insurer is entitled to summary judgment dismissing Civil Conspiracy.

Apparently the Insurer is arguing that Civil Conspiracy requires "two or more parties joined for the purpose of injuring the plaintiff and thereby causing special damages." *Peoples Federal Savings and Loan Ass'n of South Carolina v. Resources Planning Corp.*, 358 S.C. 460, 596 S.E.2d 51 (S.C. 2004).

To date, the Insured has avoided presenting its managing agents for deposition in South Carolina where it filed this lawsuit. It appears that there were numerous entities and individuals acting in combination with regard to denial of this claim. Those presently known to the Insured are Connecticut Indemnity Company, Royal and SunAlliance USA, Inc., Marine MGA, Inc., John Sterling, Don Roberts, and Capt. Thomas Pfeiffer. Additional discovery is needed on this issue. The Insured has requested an extension of discovery and has moved to compel the Insurer to produce its managing agents for deposition in South Carolina.

Conclusion

For the foregoing reasons, the Insured, Matthew Treanor, requests that this Honorable Court deny the Motion for Summary Judgment of the Insurer, Connecticut Indemnity Company, grant the Insured's Motion for Summary Judgment against the Insurer's Declaratory Judgment Action, and declare that the Insurer is obligated to pay for the subject loss.

RESPECTFULLY SUBMITTED,

JOHN HUGHES COOPER, P.C.

By: /S/ John Hughes Cooper
        Federal Court ID 298
        South Carolina Bar 1387
        State Bar of Georgia 189586
1808 Middle Street
Post Office Box 395
Sullivan's Island, SC 29482
843-883-9099; fax 843-883-9335
shiplaw@jhcooper.com

ATTORNEY FOR THE
DEFENDANT/THIRD PARTY PLAINTIFF
MATTHEW TREANOR

Sullivan's Island, South Carolina
September 5, 2005